IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| TRIDENT PRODUCTS AND SERVICES, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:10CV877–HEH ) |
| CANADIAN SOILESS WHOLESALE, LTD, *et al.*, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**
**(Motion to Dismiss Counts IV and V of the Amended Complaint)**

This is an action seeking money damages and injunctive relief for alleged breach

of contract, unjust enrichment, violation of the Virginia Uniform Trade Secrets Act, and

Lanham Act violations for false advertising. The matter is currently before the Court on

Defendants' motion to dismiss counts IV and V of the amended complaint pursuant to

Fed. R. Civ. P. 12(b)(6). The parties have submitted memoranda of law in support of

their respective positions. The Court will dispense with oral argument because the facts

and legal contentions are adequately presented in the materials presently before the Court

and argument would not aid in the decisional process. For the reasons discussed herein,

the motion will be denied.

**I.**

Trident Products and Services, LLC ("Plaintiff") filed this action against Canadian

Soiless Wholesale, Ltd. and Advanced Nutrients, Ltd. (collectively referred to as

"Defendants") on December 3, 2010. Plaintiff filed an amended complaint on April 13,

2011. The following facts are alleged in the complaint and are taken as true for the

purpose of ruling on the motion to dismiss.

Plaintiff is a limited liability company based in Petersburg, Virginia that develops,

formulates, markets, and sells soil additives designed to assist plants in the uptake of

nutrients. One such additive developed by Plaintiff, called "EPG," contains several

strains of beneficial bacteria and is alleged to be particularly effective at promoting root

growth. Plaintiff claims that it treated the formulation of EPG as confidential and took

reasonable precautions to maintain its confidentiality.

In 1999, Defendants began purchasing EPG from Plaintiff. With the consent and

knowledge of Plaintiff, Defendants would repackage EPG in smaller containers and sell it

under the name "Voodoo Juice." Defendants continued to purchase EPG from Plaintiff

under this arrangement. In December 2005, Plaintiff and Defendants entered into an

agreement under which Plaintiff disclosed its method of formulating EPG, and in

exchange Defendants agreed to keep the formulation confidential and to refrain from

reformulating or manufacturing the additive, or otherwise circumventing the supply

agreement. Following the execution of the agreement, Plaintiff allegedly disclosed

proprietary information regarding the formulation of EPG to Defendants.

At some point in 2007, Defendants stopped ordering EPG from Plaintiff. Plaintiff

alleges that the orders ceased because Defendants began to produce their own soil

additive, which was manufactured using the proprietary information disclosed pursuant to

the confidentiality agreement. The complaint alleges that Defendants' additive

2

substantially replicated the formulation of Plaintiff's EPG product. This competing

product was apparently marketed under the name "Voodoo Juice."

Plaintiff further contends that Defendants published on their website the identity

of the beneficial bacterial strains protected by the agreement. According to Plaintiff,

Defendants also published false and misleading statements on their website claiming that

their employees discovered and developed "exclusive strains of Bacillus microbes" for

Voodoo Juice. (Am. Compl. ¶ 36.) Plaintiff alleges a variety of other false and

misleading statements published by Defendants regarding the formulation and

development of Voodoo Juice.

The amended complaint alleges four counts against Defendants.[1] Count I alleges

breach of contract, count II claims that Defendants violated the Virginia Uniform Trade

Secrets Act, count IV alleges violations of the Lanham Act, and count V claims unjust

enrichment. Only counts IV and V are presently at issue.

## II.

To survive a motion to dismiss, a complaint must contain sufficient factual

information "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1940 (2009). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the

complaint, "it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Republican Party of NC v. Martin*, 980 F.2d 943, 952 (4th

---

[1] The amended complaint lists count III as "reserved." However, the Court will treat the amended complaint as asserting only four causes of action.

Cir. 1992). Rule 8 of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

While Rule 8 does not require "detailed factual allegations," *Twombly* held that it does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964. Thus a complaint containing facts that are merely "consistent with" a defendant's liability "stops short of the line between possibility and plausibility of 'entitle[ment] to relief.'" *Id.* at 557, 127 S. Ct. at 1966. A complaint achieves facial plausibility when it contains sufficient allegations supporting the reasonable inference that the facts alleged support an actionable claim. *Id.* at 556, 127 S. Ct. at 1965; *see also Iqbal*, 129 S. Ct. at 1949. "[F]ormulaic recitation of the elements of a cause of action," supported by mere conclusory statements do not suffice. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. The reviewing court, however, must assume that plaintiff's well-pleaded factual allegations are true and determine whether those allegations "plausibly give rise to an entitlement to relief." *Iqbal*, 129 U.S. at 1950.

## III.

Defendants first seek dismissal of count IV, which claims false advertising under the Lanham Act. Defendants assert that the claim for false advertising is subject to the heightened pleading standards set forth in Fed. R. Civ. P. 9(b) because the substance of the claim is fraud, even though fraud is not the asserted cause of action. Under this standard, they argue that count IV must be dismissed because it fails to allege the

violations with the requisite particularity. Additionally, Defendants assert that several of the claims and advertisements alleged in the complaint are not actionable under the Lanham Act because they are not likely to influence a consumer's purchasing decision. Plaintiff counters by first asserting that count IV should not be subject to Rule 9(b)'s heightened pleading standard because the allegations relate to false and misleading statements, rather than fraudulent statements. Second, Plaintiff argues that even if Rule 9(b) applies to count IV, it still meets that standard and therefore should not be dismissed.

Rule 9(b) provides in pertinent part: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Although Defendants urge this Court to apply Rule 9(b) to count IV, they have not cited, and the Court is unaware of, any opinion from the Fourth Circuit Court of Appeals deciding whether false advertising claims under the Lanham Act are subject to this heightened standard.[2] In any event, this Court need not decide whether Rule 9(b) applies in this instance because it is apparent that Plaintiff's allegations meet the general pleading standards of Rule 8 as well as the heightened standards of Rule 9(b).

"[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quotations and citations

---

[2] Defendants do cite opinions from district courts in Illinois, California, New York, and Indiana that applied Rule 9(b) to false advertising claims brought under the Lanham Act. (Defs.' Mem. Supp. Mot. Dismiss 5, ECF No. 24.) However, it also appears that no federal appellate court has ruled that such claims are subject to Rule 9(b).

omitted). Furthermore, to survive a motion to dismiss, a claim for false advertising under the Lanham Act must allege that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir. 2002) (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002).

Plaintiff has alleged that Defendants posted a series of claims to their website that falsely state or mislead potential customers into thinking that Defendants developed the formula for Voodoo Juice. According to the complaint, Defendants published the following statements:

- "Advanced Nutrients' scientists have devised formulas like Piranha, Tarantula, Voodoo Juice, Sensi Zym and other products that help hydroponics growers bring the benefits of live soil into the hydroponics root zone environment." (Am. Compl. ¶ 34.)

- "Advanced Nutrients [sic] scientists worked a long time to find new and more powerful strains of beneficial microbes that would make your roots bigger and more efficient." (*Id.* at ¶ 35.)

- "Voodoo also gives your plants five exclusive strains of Bacillus microbes. When I say exclusive I mean no other product has them for you. Why? Because we

6

specially bred these strains to help roots provide maximum support for larger harvests." (*Id.* at ¶ 36.)

- "We're the only company that uses these highly effective strains because our scientists breed them just for us." (*Id.* at ¶ 37.)

- "Voodoo Juice took 2 PhDs to create and formulate." (*Id.* at ¶ 38.)

Defendants urge the Court to parse each of these statements from the complaint and evaluate each one individually against the framework set out above in *Scotts Co.* Yet the complaint alleges that the statements were published on Defendants' website as part of an advertisement for the Voodoo Juice product. (*Id.* at ¶ 33.) Moreover, the statements all appear to relate to the research and development of Voodoo Juice. It is therefore logical to evaluate the statements together.

Even when viewed through the lens of the more exacting standard of Rule 9(b) it is clear that the allegations sufficiently state a claim for false advertising under the Lanham Act. Plaintiff alleges why the statements were false or misleading (*Id.* at ¶¶ 34–36) and that they were posted on a website. (*Id.* at ¶ 33.) The statements are material because they all relate to Voodoo Juice, which Plaintiff alleges is a competing product that "substantially replicated the EPG formulation developed by [Plaintiff]." (*Id.* at ¶ 31.) Furthermore, it is plainly evident that the alleged statements are aimed at promoting Voodoo Juice as an exclusive product, which demonstrates that the statements are likely to influence the purchasing decision and cause injury to Plaintiff. Lastly, although the complaint does not allege the exact date and time that the alleged false representations were made, it is reasonably discernible from the complaint that the statements were

published after 2007 when Defendants allegedly began producing Voodoo Juice. (*Id.* at ¶ 30–32.)

Additionally, the Fourth Circuit has cautioned courts that complaints should not be dismissed under Rule 9(b) "if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Westinghouse Savannah River Co.*, 176 F.3d at 784. This Court is satisfied that both factors have been met. Accordingly, the motion as to count IV will be denied.

Next, Defendants challenge the unjust enrichment claim contained in count V. Defendants argue that the existence of a valid express contract covering the same subject matter precludes recovery under an implied contract theory. Additionally, Defendants urge the Court to find that the unjust enrichment claim is preempted by § 59.1–341 of the Virginia Uniform Trade Secrets Act ("VUTSA"). Plaintiff contends in response that the existence and enforceability of the express contract has not been admitted and established. Accordingly, Plaintiff asserts it is entitled to plead unjust enrichment as an alternative theory of recovery.

The Court will first address Defendants' preemption argument under the VUTSA. Section 59.1–341 of the VUTSA provides:

> A. Except as provided in subsection B of this section, this chapter displaces conflicting tort, restitutionary, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret.
>
> B. This chapter does not affect:
> 1. Contractual remedies whether or not based upon misappropriation of a trade secret; or

2. Other civil remedies that are not based upon misappropriation of a trade secret; or

3. Criminal remedies, whether or not based upon misappropriation of a trade secret.

Va. Code Ann. § 59.1–341 (2009). Although there appear to be no decisions from the Fourth Circuit Court of Appeals or the Virginia Supreme Court on the issue of whether unjust enrichment claims are preempted by the VUTSA, a court in this district has addressed the issue, albeit regarding tort claims.

In *Stone Castle Financial, Inc. v. Friedman, Billings, Ramsey & Co., Inc.*, the court held that alternative claims are only preempted if it is clear at the motion to dismiss stage that the confidential information at issue is in fact a trade secret under the VUTSA.[3] 191 F. Supp. 2d 652, 659 (E.D. Va. March 5, 2002). *See also M-CAM v. D'Agostino, et al.*, No. 3:05cv00006, 2005 WL 2123400 (W.D. Va. Sept. 1, 2005). In denying a motion to dismiss several tort claims asserted by the Plaintiff in addition to the VUTSA claim, the *Stone Castle* court reasoned that "unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by the VUTSA." *Stone Castle*, 191 F. Supp. 2d at 659.

This Court finds the standard set out in *Stone Castle* to be persuasive. At this juncture, dismissal of count V based on preemption by the VUTSA is premature.

---

[3] Moreover, the *Stone Castle* court noted that district courts in other jurisdictions have also addressed preemption under similar statutes and that the "distinct thread common to all" decisions finding preemption at the motion to dismiss stage was an initial finding that "the information in issue—as alleged—constitute[d] trade secrets." *Stone Castle*, 191 F. Supp. 2d at 658–59.

Although the complaint suggests that the information at issue constitutes trade secrets, a definitive determination cannot be made at this stage on the present record. The complaint refers to certain proprietary information that Plaintiff possesses regarding the selection, formulation, and concentration of ingredients in Plaintiff's soil additives, and further alleges that "[s]uch proprietary information includes 'trade secrets' as defined by the Virginia Uniform Trade Secrets Act." (Am. Compl. ¶ 20.) However, the allegations only indicate that this proprietary information *includes* trade secrets. Based on the complaint, the Court cannot find that *all* of the proprietary information at issue constitutes trade secrets under the VUTSA. Accordingly, at this point, the Court cannot find that the alternative theory of recovery is preempted by the VUTSA.[4]

Defendants' argument that the unjust enrichment claim must be dismissed due to the presence of an express contract covering the subject matter is unavailing. Although Plaintiff alleges the existence of an express contract, Defendants have only admitted the *existence* of the contract in their answer—not that the contract is enforceable or that it covers the subject matter of the unjust enrichment claim. (Answer ¶ 26, ECF No. 25.) Dismissal of the unjust enrichment claim is therefore inappropriate at this stage, as Plaintiff is permitted to plead alternative theories of recovery. *See* Fed. R. Civ. P. 8(d). The motion to dismiss count V will therefore be denied.

---

[4] This Court need not reach the issue of whether a claim for unjust enrichment is considered to be "restitutionary" under § 59.1–341A or a "contractual remedy" under § 59.1–341B(1).

## IV.

For these reasons, Defendants' motion to dismiss will be denied. An appropriate Order will accompany this Memorandum Opinion.

_____/s/_____
Henry E. Hudson
United States District Judge

Date: July 19, 2011
Richmond, VA

11