IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division



TRIDENT PRODUCTS AND SERVICES, LLC,

Plaintiff,

v.                                                      Civil Action No. 3:10-CV-00877

CANADIAN SOILESS WHOLESALE, LTD.,

Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). The plaintiff, Trident Products and Services, LLC ("Trident") asserts that the defendant, Canadian Soiless Wholesale, Ltd., d/b/a/ Advanced Nutrients ("Advanced Nutrients"), misused Trident's formula for a "soil amendment" product— an additive that enhances plant absorption of nutrients. Trident's complaint, which requests money damages and injunctive relief, sets forth four claims: breach of contract, unjust enrichment, misappropriation of trade secrets, and Lanham Act violations for false advertising. Trident has agreed to dismiss the Lanham Act claim voluntarily.

In one fashion or another, all Trident's claims hinge on a single factual issue: whether the plaintiff's secret formula for fertilizer has been copied by others, to the plaintiff's detriment. This issue involves the scientific analysis of the contents of Trident's formula, the contents of competitors' formulae, and the processes used to create soil additives. Trident must have expert testimony about these matters to prove its case and to enable the fact-finder to make an

intelligent decision. Trident has failed to designate an expert in the case, and this failure forces the Court to grant summary judgment for the defendant.

In addition, Trident's unjust enrichment claim fails as a matter of law because it is barred by the existence of an express contract governing the alleged breach and, furthermore, is preempted under the Virginia Uniform Trade Secrets Act. Consequently, summary judgment for the defendant is appropriate.

## I. Statement of Material Facts

Trident is a limited liability company based in Petersburg, Virginia that develops, formulates, markets, and sells soil additives (also known as "soil amendment products") designed to enhance nutrient intake in plants. A product developed by Trident known as EPG contains five strains of bacteria which enhance plant growth.[1] The plaintiff argues that EPG is particularly effective at promoting root growth—so effective, in fact, that the defendant could not find another supplier of a comparable product until 2006, at which point it allegedly misappropriated EPG's secret formula.

The first EPG sale to Advanced Nutrients took place in 2000, and at that time Advanced Nutrients repackaged and sold EPG under the brand name "VooDoo Juice."[2] Trident knew of and consented to this resale. On various occasions, Advanced Nutrients asked to know the composition of EPG due to governmental regulations in certain markets, but Trident declined to

---

[1] These five strains are *Bacillus amyloliquifacens*, *Bacillus pasteurii*, *Bacillus laevolacticus*, *Bacillus licheniformis*, and *Paenibacillus azotofixans*. (Def. Mem. Supp. Summ. J. [*hereinafter* Advanced Nutrients Mem.], Ex. B at 1.)

[2] According to Trident's counsel, the primary horticultural use of EPG is to promote the growth of marijuana. The trade name is apparently designed to appeal to this particular agricultural market.

disclose this information without a guarantee of confidentiality.[3]  In December 2005—more than five years after their first transaction—Trident and Advanced Nutrients signed a nondisclosure agreement.

In February 2006, pursuant to the recent agreement, Trident shared the EPG formula with Advanced Nutrients.  In exchange, Advanced Nutrients agreed to be "bound to protect the information received from circumvention, reformulation, reverse engineering or production except as may be formally provided for in agreements executed with [Trident]."  (Advanced Nutrients Mem., Ex. 3-A at 1.)  The agreement also mandates a limitation on disclosure to "the officers and employees with a specific 'need to know'" and "government officials with a reasonable 'need to know.'"  (*Id.*)  The contract also spells out a specific procedure for the disclosure of confidential information to such employees and officials.  In all cases, the individual receiving the information was to "sign[ ] a certification in accordance with a form to be provided . . .", and "[a] copy of the properly executed form [was] to be provided expeditiously to [Trident] via post or fax."  (*Id.*)  The contract did not otherwise forbid Advanced Nutrients from doing business with other parties, provided that it kept EPG's formula secret.

Advanced Nutrients violated the non-disclosure agreement.  Specifically, Advanced Nutrients put the formula on its label.  In addition, it revealed the formula to regulatory officials without obtaining the certification of confidentiality.

Advanced Nutrients claims that its relationship with Trident began to deteriorate in 2005—even before the execution of the nondisclosure agreement.  Advanced Nutrients contends that this breakdown arose from a variety of factors, including a shipment of bad material in

---

[3] As an example of one such regulation, Advanced Nutrients cites a "California law requir[ing] a label to include '[a] statement of composition showing the percent of each active ingredient, which is the agent in a product primarily responsible for the intended effects (for auxiliary soil and plant substances.' Cal. Admin. Code tit. 3, § 2303(h) . . . .'"  (Advanced Nutrients Mem. 9.)

March 2005, for which it received a purchase credit.  While Trident concedes that supply-related concerns did arise, it denies that these issues caused the supplier-customer relationship to fail.  In June 2007, Advanced Nutrients stopped ordering from Trident altogether.  According to Trident, Advanced Nutrients initially indicated that it would place further orders in spring 2008, but ultimately made no purchases.

Advanced Nutrients now buys soil additive from Research Organization and Manufacture of Bioproducts ("ROMB"), a Bulgarian company.  Advanced Nutrients says that it first hired ROMB in mid-2005 to test Advanced Nutrients' products and compare them to competitors' products.[4]  For these tests, Advanced Nutrients sent ROMB a complete line of its products, including Trident's EPG.  Then in early 2006—after the nondisclosure agreement had been signed and the EPG formula communicated—Advanced Nutrients claims that ROMB compared one of its own existing products to VooDoo Juice and discovered that ROMB's product was significantly more successful at increasing root mass.  ROMB's product also had a longer shelf life and was easier to mix and store.

In 2007, Advanced Nutrients and ROMB reached an agreement by which Advanced Nutrients would purchase PGPB, ROMB's soil amendment product, and would market that product as a "new and improved" VooDoo Juice.  Trident and Advanced Nutrients agree that PGPB has included some or all of the same five strains of bacteria as EPG at various stages of development, but they disagree about whether, on the whole, the products have actually had a

---

[4] Trident questions the independence of ROMB, suggesting that Advanced Nutrients and ROMB are in effect the same entity. (Trident Mem.10.)  Trident has offered no evidence to support this claim, so the Court abstains from addressing it.

high degree of similarity throughout PGPB's various iterations.[5] Even more importantly, the parties tell different stories about how ROMB came to formulate PGPB in the first place. Trident believes that Advanced Nutrients violated the terms of their nondisclosure agreement by disclosing EPG's formula to ROMB in an effort to reformulate the product. Trident's proof boils down to a few key points of circumstantial evidence: first, that EPG and PGPB are, in fact, very similar to one another; second, that no one could have come up with a formula like the one for PGPB without first knowing the EPG formula; and, finally, that Advanced Nutrients obtained the formula and ended its relationship with Trident only after the latter disclosed the EPG formula.

Advanced Nutrients maintains it that played no role in ROMB's research, development, or product manufacturing, except for the submission of samples for testing and comparison in 2005. More specifically, Advanced Nutrients denies selecting the bacteria strains used by ROMB in the development of PGPB, and it disputes the alleged similarity between Trident and ROMB's respective versions of VooDoo Juice. "Indeed," writes Advanced Nutrients, "Trident has made no effort to analyze the composition of ROMB's product in order to compare it to EPG. Instead, the crux of all of Trident's claims is its speculation . . . that 'it is extremely improbable that anyone would come up with the same five organisms.'" (Advanced Nutrients Mem. 12.)

Trident now seeks $75,000 in compensatory and consequential damages in addition to exemplary damages and attorney fees under the Virginia Uniform Trade Secrets Act. It also seeks to enjoin Advanced Nutrients from continuing to use and disclose Trident's confidential information and from selling Voodoo Juice (or any comparable product).

---

[5] The parties disagree as to the number of bacteria in ROMB's product and the overlap of ingredients with EPG. As discussed below, this dispute about microscopic biota underscores how the lack of an expert is fatal to Trident's case.

## II. Standard of Review

Under Fed. R. Civ. P. 56(a), this Court shall grant summary judgment to the defendant if the defendant can show that (1) there is no genuine dispute as to any material fact, and (2) the defendant, therefore, is entitled to judgment as a matter of law. In other words, the defendant must show that the evidence, even when viewed in the light most favorable to the plaintiff, is insufficient to establish the required elements of the plaintiff's claims against the defendant. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). More importantly, in a case such as this one, where a claim of a scientific or technical nature is at issue and the plaintiff fails to offer an expert's support, a court must grant summary judgment to the defendant. *See, e.g., Thompson v. Brisk Transp., LP*, 401 F. App'x 826, 827–28 (4th Cir. 2010).

## III. Discussion

### A. Trident's Need for an Expert Scientific Witness

To make its case, Trident must prove two facts: that Trident's and its competitors' products contain the same elements, and that the competitors copied Trident's formula to create their own products. As discussed in Part III, Sections B–D of this opinion, one or both of these facts are essential to prove elements of all of Trident's claims.

Trident has no direct proof that ROMB based its additive on EPG, and must, therefore, rely on circumstantial evidence. Trident must prove, at a minimum, that PGPB was similar enough to EPG—and sufficiently distinct from other known additive formulations—to conclude that the former was derived from the latter and not from an independent source. This entails knowledge of the microbes in each product and the process to develop fertilizers of this sort. But without the use of a scientific expert on the formulation of such products, Trident cannot make this case. For that matter, Trident cannot even convincingly show that EPG is all that unique

within the soil-amendment products industry—other competitors have developed products with the same five strains of bacteria, rendering the underlying assertion of reformulation dubious.

Trident contends that it has produced sufficient circumstantial evidence for its case to survive. Essentially, its evidence is that PGPB contains, among other things, the same microbes as EPG, and therefore ROMB must have copied EPG's formula. To make this point, however, Trident must have expert testimony about the commonalities of the formulae, the likelihood that Trident's microbes would wind up in another manufacturer's product, and the inventive process by which a competitor would have created its product. Trident needs an expert to make these points.

The Court may not leave these issues for the jury to decide on its own, for information that "is not within the common knowledge of a juror . . . requires expert testimony." *Thompson v. Brisk Transp.*, 401 F. App'x 826 (4th Cir. 2010) (citing *Kale v. Douthitt*, 274 F.2d 476, 481 (4th Cir. 1960)). When expert testimony is required, but the plaintiff offers no expert, then summary judgment for the defendant is appropriate. *See, e.g.*, *WiAV Solutions LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 640-41 (E.D. Va. 2010).

Trident has not designated an expert witness to testify whether ROMB could have independently identified the same strains of bacteria. It contends, in fact, that an expert witness would not have been able to shed much light on the controversy due to Advanced Nutrients' own failure to produce scientific data. "While the testimony of an expert may have been useful," Trident writes, "Advanced Nutrients failed to produce any actual test data that support the alleged various research, as accordingly there is nothing of record for an expert to base his or her testimony." (Trident Mem. 9.)

To support its claim, Trident instead argues that both it and ROMB not only use the same five out of hundreds of microbes, but also that they both use Kathon as a preservative. Trident argues that "[b]y exercising common sense, and evaluating all of the evidence, a reasonable juror could conclude that the arrival at the same identical 5 strains of microbes . . . is strong circumstantial evidence of copying and cooperation." (*Id.* at 10.) Trident does not substantiate this position with any authority. It might be the case, after all, that many other products utilize Kathon and the very same microbes, despite the availability of countless others. It may also be that the process to create nutrients of this sort inevitably leads to the use of these microbes, that the value of the particular biota is common knowledge in the nutrient industry, or that the elements are used in all root nutrients. Indeed, in a mature market, some commonality of active ingredients will likely occur. Regardless, a layperson is in no position to reach Trident's desired conclusion without the guidance of an expert.

Previous cases illustrate that expert testimony is mandatory when attempting to reach a conclusion that necessitates specialized knowledge. *See, e.g., Pridgen v. IRS*, 2 F. App'x 264, 274 n.5 (4th Cir. 2001) (requiring expert testimony for an assessment of profit margin averages in the tobacco industry); *Stewart Title Guar. Co. v. Linowes*, 42 F.3d 1386 (4th Cir. 1994) (requiring expert testimony to establish the standard of care in legal malpractice cases); *Klein v. Boyle*, 8 F.3d 819 (4th Cir. 1993) (requiring expert testimony to establish the standard of care in medical malpractice cases); *Design & Production, Inc. v. Am. Exhibitions, Inc.*, 2011 WL 5121120, at *8 (E.D. Va. Sept. 16, 2011) (requiring expert testimony to determine whether the design and production of a certain product conformed to "museum quality"); *see also Roche v. Lincoln Property Co.*, 278 F. Supp. 2d 744 (E.D. Va. 2003) (barring an expert's testimony on whether mold exposure caused respiratory ailments under *Daubert*, in part because he was "not a

toxicologist, a microbiologist, or an industrial hygienist," even though he was an allergist). The present case is yet another requiring specialized knowledge, for whether ROMB could have independently developed a product similar to EPG is well outside the common knowledge of a juror.

As discussed below, the plaintiff's failure to identify an expert witness requires the entry of summary judgment for the defendant on all claims. *WiAV Solutions LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 640-41 (E.D. Va. 2010) (concluding that when expert testimony is required, but the plaintiff offers no expert, then summary judgment for the defendant is appropriate).

### B. Breach of Contract Claim

Although Advanced Nutrients has breached the nondisclosure contract,[6] proof of *one* element of a claim is not enough to overcome a motion for summary judgment. Advanced Nutrients must prevail if Trident has failed to adduce sufficient evidence with respect to *any* of the elements of its contract claim. Most critically in this case, Trident must show that the breach contributed to an injury in some way or another. *See Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004) (identifying the elements of a breach of contract claim, including injury resulting from breach). Trident clearly recognizes this fact, because it writes in its supporting memorandum that the "plaintiff must show a causal connection between the defendant's wrongful conduct and the damages asserted." (Trident Mem. 19.)

The measure of Trident's damages, and its entitlement to an injunction, arise from competitors' wrongful use of Trident's formula, depriving Trident of sales. Since Trident cannot

---

[6] As stated earlier, the parties' agreement restricted disclosure to government officials and regulators, and it also laid out a specific procedure to certify the disclosure as confidential at the time such a disclosure was made. At a minimum, Advanced Nutrients ignored these terms by printing labels for VooDoo Juice that listed the five microbes contained in EPG and by disclosing the formula to regulators without following the certification procedure.

establish that competitors wrongfully used its formula, it cannot prove it suffered an injury caused by the breach. As noted above, Trident has put forth no evidence either that Advanced Nutrients used the confidential information to develop a product in conjunction with ROMB or that ROMB's product is sufficiently similar to EPG to warrant the conclusion of reformulation. In this context, expert testimony is essential, for ROMB's director says, in an affidavit, that ROMB developed its product independently and that Advanced Nutrients never disclosed any confidential information about EPG to ROMB. ROMB's director also declares that ROMB's product (PGPB) and Trident's product (EPG) are composed of different substances, despite the overlap in certain bacteria strains. Only an expert witness can counter this evidence.

In sum, although Trident can show that Advanced Nutrients did not follow the terms of their nondisclosure agreement, it cannot show that this violation contributed to an identifiable injury. Quite simply, there is no proof—either direct or circumstantial—that PGPB was derived from EPG, and without that proof Trident's contract claim cannot proceed. Accordingly, the Court must grant the defendant's motion for summary judgment with respect to the plaintiff's contract claim.

### C. Misappropriation of Trade Secrets

Allegations of trade-secret misappropriation are governed by the Virginia Uniform Trade Secrets Act ("VUTSA"). Va. Code § 59.1-336. In order to establish that certain information has been the subject of a trade-secret violation, a plaintiff must prove two statutory elements: (1) the existence of a "trade secret"; and (2) the "misappropriation" of that trade secret by the defendant. *MicroStrategy, Inc. v. Li*, 268 Va. 249, 263, 601 S.E.2d 580, 588 (Va. 2004). As with its contract claim, Trident's failure to designate a scientific expert dooms its trade secret claim. Trident cannot show that its formula was "not known or readily ascertainable by proper means,"

an essential aspect of the "existence" prong.  Additionally, Trident cannot show that the formula for EPG was "misappropriated" by Advanced Nutrients.

### 1. Existence of a Trade Secret

VUTSA defines a trade secret as follows:

[I]nformation, including but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that:

    1. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or us, and

    2. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Va. Code § 59.1-336.  The determination of whether a trade secret exists is generally a question of fact to be determined "from the greater weight of the evidence."  *See MicroStrategy*, 268 Va. at 264, 601 S.E.2d at 589 (citing cases).

"The case law is clear that just about anything can constitute a trade secret under the right set of facts."  *MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004).  But to meet the definition, an alleged trade secret must meet all the criteria listed in the statute: (1) independent economic value; (2) not known or readily ascertainable by proper means; and (3) subject to reasonable efforts to maintain secrecy.  *See, e.g., Decision Insights, Inc. v. Sentia Group, Inc. (Decision Insights II)*, 416 F. App'x 324, 331 (4th Cir. 2011) (listing these three issues as separate elements for district court's consideration on remand).  While Trident can satisfy the first and third criteria, the plaintiff has not shown that the EPG formula was not known or readily ascertainable by proper means.

This Court has noted the importance of showing that "a trade secret must not be readily ascertainable through legitimate means."  For if a competitor can acquire the secret with relative

ease, "the inference is that the information was either essentially 'public' or is of de minimus economic value." *MicroStrategy*, 331 F. Supp. 2d at 416–17. In other words, even if a company has expended significant resources to develop a trade secret on its own, it cannot prevail under VUTSA if the barrier to obtaining that trade secret is quite low in reality.

As with the other VUTSA factors, "[w]hat constitutes *readily* ascertainable through proper means is heavily fact-dependent and simply boils down to assessing the ease with which a trade secret could have been independently discovered." *Id.* (emphasis in original). The record shows that competitors of Advanced Nutrients have sold products with the same five strains of bacteria. In light of Trident's own admission that other competitor's products contain the same five strains of bacteria, the limited accessibility of EPG's particular formula is hardly "self-evident." To put it simply, the very combination of the five microbes does little to prove the existence of a trade secret when other products contain the same.

Trident attempts to bolster its position with several assertions, but they are unavailing. First, its claim that Advanced Nutrients was unable to find another supplier despite "years of searching" is unsupported by anything in the record. Although, during discovery, Advanced Nutrients could not point to any specific competitors to EPG that existed in 2005, it never conceded that there were no such products on the market at that time.

Next, Trident points to Advanced Nutrients' alleged "inability to determine or ascertain the formula on its own," but the record does not show that the company even attempted to discern the formula independently. Moreover, to satisfy this prong of the test, Trident would not have to prove that a *customer*, like Advanced Nutrients, was unable to readily ascertain the EPG formula. Instead, it would have to prove that nutrient producers, such as ROMB, could not discern the EPG formula with a reasonable level of effort. *See MicroStrategy*, 331 F. Supp. 2d at

416 ("[T]he requirement that information not be generally known refers to the knowledge of *other members of the relevant industry*—the persons who can gain economic benefit from the secret, not the knowledge of the public generally.") (emphasis added).   Advanced Nutrients might market and sell many different soil amendment products, but its ability to figure out the EPG formula is irrelevant unless it were the type of entity that might actually try to do so.

In sum, Trident needs to prove that other companies that formulate soil-amendment products did have or would have had difficulty coming up with a substantially similar product. But Trident cannot do so without the benefit of an expert witness, which is required here for the same reasons explained earlier.   And, in the absence of an expert witness to address the various aspects of soil-additive formulation, the fact-finder is in no position to evaluate issues such as EPG's uniqueness or ease of formulation. *See, e.g., WiAV Solutions LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 640-41 (E.D. Va. 2010) (explaining that summary judgment for the defendant is appropriate when expert testimony is required and the plaintiff fails to offer it).

Given Trident's failure to designate an expert witness, the Court concludes that Trident cannot show that EPG's formula was "not known or readily ascertainable."   In short, Advanced Nutrients is entitled to summary judgment due to Trident's failure to provide sufficient evidence regarding the existence of a trade secret.

### 2. Misappropriation

Trident also fails on the latter half of the VUTSA analysis.   To prove "misappropriation" of a trade secret, the plaintiff must establish two elements: (1) that the defendant acquired, disclosed, or used a trade secret developed by the plaintiff through improper means (namely, without express or implied consent); and (2) that the defendant knew or had reason to know that its knowledge of the trade secret was either acquired under circumstances giving rise to a duty to

maintain its secrecy or derived through a person owing such a duty to the plaintiff.[7]  *See MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d at 417; *MicroStrategy, Inc. v. Li*, 268 Va. at 263, 601 S.E.2d at 589 (citing Va. Code § 59.1-336). This inquiry, like the question of whether a trade secret exists, is generally a factual one. *MicroStrategy, Inc. v. Li*, 268 Va. at 264, 601 S.E.2d at 589. Indeed, in *MicroStrategy, Inc. v. Li*, the Supreme Court of Virginia described it as "uniquely factual in nature because it ordinarily involves extensive circumstantial evidence that must be evaluated against the direct evidence often presented by defendants in a trade secrets case." 268 Va. at 265, 601 S.E.2d at 589.

The plaintiff runs into the very same problem here as it did with its contract claim and its attempt to show the existence of a trade secret. Without an expert witness, it cannot prove that ROMB received the secret information and used it to cause damage to Trident. The plaintiff must not only prove that the defendant has breached a duty—whether statutory, like VUTSA, or at common law—but also that the defendant's breach has resulted in the plaintiff's injury. *See, e.g., MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d at 425 (ruling that a claim of misappropriation could not survive where the plaintiff could show that defendant's agent possessed a trade secret but could not show that the agent disclosed the trade secret to the defendant). As explained earlier, the plaintiff must demonstrate a plausible causal connection between the information in question and the alleged injury, even in the absence of a "smoking gun." In this case, Trident offers little more than speculation that the formula developed by ROMB benefited from Trident's secret.

The plaintiff must support its claim with "actual objective *evidence*," not "only *inference*." *Othentec, Ltd. v. Phelan*, 526 F.3d 135, 142 (4th Cir. 2008) (emphasis added). In

---

[7] The second element is clearly established. Given Trident's insistence on a confidentiality agreement, Advanced Nutrients clearly knew it had a duty to keep the formula secret.

*Othentec*, the plaintiffs conceded during deposition testimony that they could not identify which specific lines of programming code from their proprietary software were being used by the defendants in making their products. While a director for one plaintiff claimed that he had his "suspicions," he could neither point to lines of code with any specificity nor say anything about the defendant's manufacturing process. The thrust of his claim was that, without the use of the plaintiff's alleged trade secret, there was simply no "way [the defendant] could be where it is today." *Id.* And "unless someone [was] foolish enough to believe" that the defendant developed the product without the benefit of plaintiff's trade secret, the plaintiffs deserved to prevail. But the Fourth Circuit firmly rejected this line of argument and affirmed the district court's grant of summary judgment to the defendants. *Id.* "In trying to survive a motion for summary judgment the nonmoving party 'cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.' . . . [The defendants'] claim under the VUTSA relies exclusively on allegations and inferences instead of any sort of objective evidence." *Id.* (citations omitted).

Trident uses the same unsuccessful tactic as the plaintiff in *Othentec*. Because Trident can point to similarities between its product and ROMB's, it asks the Court to make an inferential jump to an unwarranted conclusion: no one could have invented the nutrient without using Trident's formula. As pointed out above, without the assistance of expert testimony, the finder of fact in this case must guess as to the significance of the overlap and the likelihood that a nutrient producer could come upon the formula without Trident's trade secret. *See, e.g., MicroStrategy, Inc. v. Li*, 268 Va. at 261–62, 266, 601 S.E.2d at 587–88, 590 (rejecting a misappropriation claim where the plaintiff asserted "substantial similarity" between its product and that of defendant, because the common features were the result of independent design

15

decisions).  Without some greater proof that the defendant actually *misused* Trident's formula, the claim cannot go forward.  Again, the key element to Trident's case would be expert testimony.

The common designation and use of testifying experts in trade-secret makes Trident's unwillingness to bring one forward indeed striking.  Given that technical and scientific matters are almost always at issue, it is hard to locate previous trade-secret cases where testifying experts did *not* appear on behalf of the plaintiff, if not both sides.  *See, e.g.*, *Decision Insights, Inc. v. Sentia Group, Inc. (Decision Insights II)*, 416 F. App'x 324, 329–30 (4th Cir. 2011); *Decision Insights, Inc. v. Sentia Group, Inc. (Decision Insights I)*, 311 F. App'x 586, 594 (4th Cir. 2009); *MicroStrategy, Inc. v. Li*, 601 S.E.2d at 585–87, 268 Va. at 258–61 (where plaintiff used one testifying expert and defendant used three).

Trident offers an unsatisfactory justification for its decision not to use an expert.  "While the testimony of an expert may have been useful," it writes, "Advanced Nutrients failed to produce any actual test data that support the alleged various research, as accordingly there is nothing of record for an expert to base his or her testimony." (Trident Mem. 9.)  The defendant, however, bears no burden on proving the role of the trade secret in a new product.  In a claim of misappropriation of trade secrets, the burden of proof rests with the plaintiff at all times.  *See MicroStrategy*, 268 Va. at 265, 601 S.E.2d at 590.

Since Trident cannot carry its burden without an expert, the Court must grant summary judgment on the trade secret claim to Advanced Nutrients.

### D. Unjust Enrichment Claim

The plaintiff's unjust enrichment claim also founders on the lack of an expert. Since Trident cannot show how ROMB created its formula, it cannot show that Advanced Nutrients unjustly received some benefit.

Additionally, two independent reasons lead the Court to grant summary judgment for the defendant on Trident's unjust enrichment claim. First, Trident may not bring an unjust enrichment claim because the parties entered an express contract. Second, VUTSA preempts Trident's unjust enrichment claim.

#### 1. Express Contract

Virginia law is clear that a plaintiff cannot raise an unjust enrichment claim where an express contract governs the alleged wrongdoing. *See, e.g., Khair v. Countrywide Home Loans, Inc.*, 2010 U.S. Dist. LEXIS 58922, at *12 (E.D. Va. June 14, 2010); *Weiler v. Arrowpoint Corp.*, 2010 U.S. Dist. LEXIS 46163, at *26 (E.D. Va. May 11, 2010). Trident claims that Advanced Nutrients has unjustly benefited from the disclosure of the formulation of EPG—in other words, from its failure to adhere to the terms of the nondisclosure agreement. But Trident may not also claim unjust enrichment on the part of Advanced Nutrients when the breach is already covered by the express contract. In short, the two claims are mutually exclusive, so summary judgment for Advanced Nutrients is proper.

#### 2. Preemption under VUTSA

The preemption provision of VUTSA says that it "displaces conflicting tort, *restitutionary*, and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret." Va. Code. § 59.1-341 (emphasis added). This provision specifically does not affect "[c]ontractual remedies" or "[o]ther civil remedies that are not based upon misappropriation of a trade secret." *Id.* Consequently, it does not prevent Trident from

bringing the contract claim discussed earlier, but it does raise a conflict with Trident's claim of unjust enrichment, a "restitutionary" remedy.

The VUTSA preemption provision is "intended to prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *Smithfield Ham & Products Co., Inc. v. Portion Pac, Inc.*, 905 F. Supp. 346, 348 (E.D. Va. 1995). According to *Smithfield Ham*, only those "distinct theories of relief" that "are supported by facts unrelated to the misappropriation of the trade secret" may escape preemption under the VUTSA. *Id.* at 348–49. As this Court has held:

> [I]n order for the VUTSA to preempt the [other] claims, . . . those claims must be predicated "entirely" upon [the defendant's] alleged misappropriation of trade secrets.

*E.I. DuPont v. Kolon Industries*, 688 F. Supp. 2d 443, 452 (E.D. Va. 2009); *see also MicroStrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1364 (Fed. Cir. 2005) (ruling that the district court properly applied the preemption clause because "[the plaintiff] set forth two theories that both depend upon the misappropriation of a trade secret, *not* a misappropriation theory and an independent and alternative conspiracy theory.").

Thus, Trident's unjust enrichment theory may survive if it states an equitable claim that relies on different facts than its misappropriation claim. Unfortunately for Trident, unlike the claim at issue in *Smithfield Ham*, the unjust enrichment claim in this case does stem "entirely" from the alleged misappropriation: the benefit conferred to Advanced Nutrients was allegedly caused by "[t]hat disclosure by Trident to Advanced Nutrients relating to the formulation of the EPG product." (First Am. Compl. ¶ 59.) Since Trident's unjust enrichment claim cannot be made without alleging the very misappropriation covered by VUTSA, the claim must fail.

## VI. Conclusion

For the reasons set forth above, the Court shall grant the defendant's motion for summary

judgment with respect to all claims.

The Court will enter an appropriate order.


Date: April 18, 2012
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge